U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2020 JAN -9 PM 4:08

CLERK
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ASHLEY FONTAINE, )
)
Plaintiff, )
)
v. ) Case No. 2:19-cv-00133
)
INTERSTATE MANAGEMENT COMPANY, )
LLC, d/b/a TRADER DUKE'S )
RESTAURANT & LOUNGE, )
)
Defendant. )

## ENTRY ORDER GRANTING DEFENDANT'S MOTION
## TO COMPEL ARBITRATION AND TO STAY THE PROCEEDINGS
(Doc. 17)

Plaintiff Ashley Fontaine brings this action against Defendant Interstate Management Company, d/b/a Trader Duke's Restaurant & Lounge, alleging three state law claims arising from her employment with Defendant: (1) sexual harassment in violation of 21 V.S.A. § 495h, (2) discrimination based on sex in violation of 21 V.S.A. § 495, and (3) retaliation for reporting sexual harassment in violation of 21 V.S.A. § 495. Plaintiff seeks compensatory, emotional distress, and punitive damages, as well attorney's fees and costs.

On September 12, 2019, Defendant moved to compel arbitration and to stay the proceedings under the Federal Arbitration Act ("FAA") on the grounds that Plaintiff entered into a valid arbitration agreement in which she agreed to arbitrate harassment, discrimination, and retaliation claims. (Doc. 17.) Plaintiff filed an opposition on September 23, 2019, arguing that the arbitration agreement is procedurally and substantively unconscionable. Defendant filed a reply on October 4, 2019, at which time the court took the pending motion under advisement.

Plaintiff is represented by John C. Mabie, Esq. Defendant is represented by Christopher B. Kaczmarek, Esq., Eric D. Jones, Esq., and Hilary K. Detmold, Esq.

I.  **Allegations in the Complaint.**

In October of 2018, Defendant, a foreign limited liability company with its principal place of business in Arlington, Virginia, hired Plaintiff, a resident of Saint Albans, Vermont, as a banquet chef for its restaurant in South Burlington, Vermont. Plaintiff reported directly to Food and Beverage Director Gary Smith and Executive Chef Tony Anderson.

Plaintiff alleges that Mr. Anderson sexually harassed her during the course of her employment by, among other things, calling her "Baby," "Baby Girl," "Babe," "Hun," and "Honey" despite her requests for him to stop. (Doc. 7 at 2, ¶ 10.) She asserts he "frequently made physical contact with [her] when it was not necessary that he do so," by "plac[ing] his hand on [her] back while speaking to her and slowly drag[ging] it away as he walked away," even though Plaintiff made clear that his "touching was not welcome." *Id.* at 2, ¶¶ 14-15. Mr. Anderson also allegedly showed Plaintiff a photograph of a nude woman and told her that a necklace gifted to her by her deceased grandmother "ma[de] [her] boobs look sexy." *Id.* at 3, ¶ 25.

Plaintiff complained to Mr. Smith, General Manager Lainnie LaCroix, and a human resource representative identified only as "Kathy." *Id.* at 3, ¶ 28. Following the necklace comment, Kathy provided Mr. Anderson with a verbal warning that "a female employee had complained that [Mr. Anderson] was 'making comments about breasts and butts.'" *Id.* at 4, ¶ 32. Because Plaintiff was the only female employee in the kitchen, Mr. Anderson allegedly identified her as the source of the complaint and "became aggressive and rude." *Id.* at 4, ¶ 34. Shortly thereafter, Plaintiff asserts that she requested time off from Mr. Smith and Mr. Anderson following a miscarriage. Mr. Anderson told several employees about this request.

On May 31, 2019, Plaintiff tendered her resignation. She filed suit against Defendant in Vermont Superior Court on July 15, 2019, and Defendant removed the case to this court on July 31, 2019. Defendant asked Plaintiff to agree to arbitrate her claims pursuant to the Arbitration Agreement, and Plaintiff refused to do so.

## II. The Arbitration Agreement.

On January 30, 2019, Defendant presented Plaintiff with a three-page Mutual Agreement to Arbitrate (the "Arbitration Agreement") "as a condition of her employment" with Defendant. (Doc. 17-2 at 2, ¶ 7.) Every page of the Arbitration Agreement is identified as a "Mutual Agreement to Arbitrate" in its bottom left-hand corner. On the first page of the Arbitration Agreement, a block of bolded text in English and Spanish provides:

> **This Mutual Agreement to Arbitrate is a contract and covers important issues relating to Your rights. It is Your sole responsibility to read it and understand it. You are free to seek assistance from independent advisors of Your choice outside the Company or to refrain from doing so if that is Your choice.**

(Doc. 17-3 at 2.) The next paragraph states:

> The Mutual Agreement to Arbitrate ("Agreement") is between You (identified in the signature block below and referred to in this Agreement as "You," "I," "Me", or "Employee") and Interstate Hotels & Resorts and its affiliates and subsidiaries (hereafter the "Company"). The Federal Arbitration Act (9 U.S.C. § 1 et seq.) governs this Agreement, which evidences a transaction involving commerce. All disputes covered by this Agreement will be decided by a single arbitrator through final and binding arbitration **and not by way of court, jury trial, or any other adjudicatory proceeding**.

*Id.* (emphasis in original).

A section titled "**CLAIMS COVERED BY THE AGREEMENT**," also located on the first page, explains:

> Except as it otherwise provides, this Agreement applies to any dispute, past, present, or future, that the Company may have against You or that You may have against the Company, and/or any of its/their: officers, directors, members, owners, shareholders, or employees[.]
>
> . . .
>
> Except as it otherwise provides, this Agreement applies, without limitation, to claims based upon or related to discrimination, harassment, retaliation, defamation (including post-employment defamation or retaliation), breach of a contract or covenant, fraud, negligence, breach of fiduciary duty, trade secrets, unfair competition, wages, minimum wage and overtime or other compensation or any monies claimed to be owed, meal breaks and rest

3

periods, termination, tort claims, common law claims, equitable claims, and claims arising under the Defend Trade Secrets Act, Fair Credit Reporting Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance), Affordable Care Act, Genetic Information Non-Discrimination Act, Uniformed Services Employment and Reemployment Rights Act, Worker Adjustment and Retraining Notification Act, Older Workers Benefits Protection Act of 1990, Occupational Safety and Health Act, Consolidated Omnibus Budget Reconciliation Act of 1985, state and local statutes or regulations addressing the same or similar subject matters, and all other federal, state, or local legal claims arising out of or relating to your application for employment, employment, or termination of employment.

*Id.* The Arbitration Agreement further specifies that:

> The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, waiver, or formation of this Agreement including, but not limited to[,] any claim that all or any part of this Agreement is void or voidable.

*Id.* The only exception to this provision relates to class action waivers.

The Arbitration Agreement limits discovery to "the deposition of two individual fact witnesses and any expert witness designated by another party[,]" twenty-five requests for production of documents, and five interrogatories. *Id.* at 3. Each party may also subpoena witnesses and documents for discovery or the arbitration hearing. "The parties may mutually agree to additional discovery, and the Arbitrator will have exclusive authority to entertain requests for additional discovery, and to grant or deny such requests." *Id.*

In ruling on the parties' claims, the Arbitrator "shall apply the substantive federal, state, or local law applicable to the claim(s) asserted" and must apply the Federal Rules of Civil Procedure in deciding "a motion to dismiss and/or a motion for summary judgment[.]" (Doc. 17-3 at 3.) The Arbitration Agreement also contains a merger clause stating:

4

> **ENTIRE AGREEMENT**: This is the complete agreement of the parties about arbitration of covered disputes. Any contractual disclaimers the Company has in any handbooks, other agreements, or policies do not apply to this Agreement. Additionally, notwithstanding any contrary language in any handbooks, other agreements, or policies, this Agreement may only be modified, revised, or terminated by a writing signed by both You and the Company referencing this Agreement. This Agreement will survive the termination of my employment and the expiration of any benefit, and it will apply upon any transfer, reassignment, and/or re-employment by the Company if my employment is ended but later renewed.

*Id.* at 4. Above the signature block on the last page, the Arbitration Agreement states in bold font and capital letters:

> **I AGREE TO THIS MUTUAL AGREEMENT TO ARBITRATE AND UNDERSTAND ITS TERMS. I AGREE THAT THROUGH THIS AGREEMENT THE COMPANY AND I ARE GIVING UP OUR RIGHTS TO A COURT OR JURY TRIAL AND AGREEING TO ARBITRATE CLAIMS COVERED BY THIS AGREEMENT.**

*Id.*

In support of her opposition to Defendant's motion to compel arbitration, Plaintiff submitted an affidavit regarding the circumstances surrounding her signing of the Arbitration Agreement, in which she attests that two representatives of Defendant's Human Resources department required her and other employees to complete the Arbitration Agreement and other paperwork because Trader Duke's Restaurant & Lounge was under "new management." (Doc. 18-1 at 1, ¶ 6.) She states that she was given a "substantial stack of [paperwork] and a [laptop] computer" and told to fill out both physical and electronic copies. *Id.* at 1, ¶ 7. She alleges that she was not given sufficient time to review each document (although she does not indicate the time allotted for this purpose), and she does not recall reading the Arbitration Agreement. She further attests that she believed signing each document was a condition of her continued employment. She represents that she has a high school education and that Defendant is a large, national corporation with substantial resources. For that reason, she claims that the Arbitration Agreement is the product of unequal bargaining power.

5

## III. Conclusions of Law and Analysis.

### A. Whether the FAA Mandates Enforcement of the Arbitration Agreement.

The FAA, 9 U.S.C. §§ 1-16, "requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation." *Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003). Congress' "clear" intent in passing the FAA was "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). "To achieve these goals, [the FAA] provides that arbitration clauses in commercial contracts 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (citing 9 U.S.C. § 2).

"By its terms," the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). In reviewing motions to compel arbitration, courts "must therefore determine: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; and, (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable." *Daly*, 939 F.3d at 421 (alterations, citation, and internal quotation marks omitted).

Vermont law dovetails with federal law regarding the enforceability of arbitration agreements. As the Vermont Supreme Court has explained:

> Whether and how a particular issue between the parties is subject to arbitration is a matter of contract. Parties "are generally free to structure their arbitration agreements as they see fit. . . . [T]hey may limit by contract the issues which they will arbitrate, . . . [as well as the] rules under which that arbitration will be conducted." *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 479 [] (1989) (citation omitted). Courts must give effect to these arbitration provisions. *See* 9 U.S.C. § 2 ("A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be

valid, irrevocable, and enforceable . . . ."); 12 V.S.A. § 5652(a) ("[A] provision in a written contract to submit to arbitration any controversy thereafter arising between the parties creates a duty to arbitrate, and is valid, enforceable, and irrevocable . . . ."); *see also Volt*, 489 U.S. at 478[] (explaining that the FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms").

*State v. Philip Morris USA Inc.*, 2008 VT 11, ¶ 11, 183 Vt. 176, 182, 945 A.2d 887, 892.

Plaintiff, as a party to the Arbitration Agreement, is "charged with knowledge of the contents of the[] contract and [is] bound by the clear and unambiguous terms of the same." *Johnson v. Hardware Mut. Cas. Co.*, 187 A. 788, 794 (Vt. 1936); *see also Upton v. Tribilcock*, 91 U.S. 45, 50 (1875) ("It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained."); *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 34 (2d Cir. 1997) (holding persons have a "basic responsibility . . . to review a document before signing it"). In this case, the Arbitration Agreement is short, conspicuously labeled, and reminds the signatory on every page and in bold font that it is an agreement to arbitrate that affects the signatory's right to bring certain claims in a court or in an administrative proceeding. The operative language is non-technical and unambiguous. The claims Plaintiff seeks to assert in this lawsuit fall squarely within the scope of "any dispute, past, present, or future" between Plaintiff and Defendant or its employees, including "without limitation, . . . claims based upon or related to discrimination, harassment, retaliation, . . . and all other federal, state, or local legal claims arising out of or relating to your . . . employment[.]" (Doc. 17-3 at 2.) The Arbitration Agreement must therefore be enforced under both federal and state law. This, however, does not foreclose Plaintiff's claim that it is unconscionable. 9 U.S.C. § 2 allows "generally applicable contract defenses, such as fraud, duress, or unconscionability, [to] be applied to invalidate arbitration agreements[.]" *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Courts look to state law to determine whether substantive contract defenses apply. *See Littlejohn v. TimberQuest Park at Magic, LLC*, 116 F. Supp. 3d 422, 430 (D. Vt. 2015) ("[C]laims of

7

unconscionability . . . are matters arising under state substantive law and are enforced in the same way under either the federal or state arbitration acts.").

"Under Vermont law, a contract provision may be unenforceable where the provision is procedurally unconscionable, substantively unconscionable, or both." *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019) (citing *Glassford v. BrickKicker*, 2011 VT 118, 191 Vt. 1, 35 A.3d 1044). A contract may be unconscionable if there is "unequal bargaining power between the parties, lack of opportunity to read the contract, [or] use of fine print in the contract[.]" *Val Preda Leasing, Inc. v. Rodriguez*, 540 A.2d 648, 652 (Vt. 1987) (citing *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986))[1]; *see also KPC Corp. v. Book Press, Inc.*, 636 A.2d 325, 329 (Vt. 1993) ("In considering whether a party has been unfairly surprised by a contract term or its application, we take into account the party's relative business experience and education, the party's opportunity to understand the terms of the contract, and whether the terms were hidden in the fine print."). Courts also consider "the terms of the contract, including substantive unfairness." *Val Preda Leasing, Inc.*, 540 A.2d at 652.

Because the Arbitration Agreement vests the Arbitrator with the "exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, waiver, or formation" of the Arbitration Agreement, "including, but not limited to[,] any claim that all or any part of [the] Agreement is void or voidable," (Doc. 17-3 at 2), it is the Arbitrator and not this court that must consider Plaintiff's unconscionability defense.

---

[1] In *Val Preda Leasing, Inc. v. Rodriguez*, 540 A.2d 648 (Vt. 1987), the Vermont Supreme Court cited *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986), which identified the following factors to be considered:

> [A] standardized agreement executed by parties of unequal bargaining strength[]; lack of opportunity to read or become familiar with the document before signing it[]; use of fine print in the portion of the contract containing the provision[]; absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated[]; the terms of the contract, including substantive unfairness[]; the relationship of the parties, including factors of assent, unfair surprise and notice[]; and all the circumstances surrounding the formation of the contract, including its commercial setting, purpose and effect[.]

*Davis*, 712 P.2d at 991 (citations and internal quotation marks omitted).

As Plaintiff has not "challenged the delegation provision specifically, [the court] must treat it as valid under [9 U.S.C.] § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010).

For the reasons stated above, the court GRANTS Defendant's motion to compel arbitration for Plaintiff's claims without deciding the merits of Plaintiff's unconscionability challenges.

### B. Whether the Court Should Stay the Proceedings Pending Arbitration.

Pursuant to 9 U.S.C. § 3, a court "shall" grant a party's motion to stay if "any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration" and the court is "satisfied that the issue involved . . . is referable to arbitration under such an agreement[.]" The Second Circuit has recently interpreted "the text, structure, and underlying policy of the FAA [to] mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). Under *Katz*, "it is inappropriate for a court to dismiss an action after compelling arbitration where a stay has been requested by any party[.]" *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 226 n.5 (2d Cir. 2019) (reversing the district court's judgment and remanding to compel arbitration and stay further proceedings pending arbitration).

Because the court refers all of Plaintiff's claims to arbitration and Defendant requests a stay, the court GRANTS Defendant's motion to stay the proceedings pending arbitration.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's Motion to Compel Arbitration and to Stay the Proceedings. (Doc. 17.)
SO ORDERED.

Dated at Burlington, in the District of Vermont, this 9th day of January, 2020.

Christina Reiss, District Judge
United States District Court